# Applicability of Section 504 of the Rehabilitation Act to Certain Governmental Entities

Section 504 of the Rehabilitation Act of 1973 prohibits discrimination against qualified handicapped individuals in any program or activity conducted by any "Executive agency." The legislative history of the 1978 Amendments to the Act makes clear that Congress intended § 504 to apply to all "agencies and instrumentalities" in "the Executive branch," including independent regulatory agencies performing functions constitutionally committed to the Executive Branch. The term "Executive agency" as used in § 504 must be construed broadly to include all government entities which are not within either the legislative or judicial branches.

All of the entities listed in the memorandum are "Executive agencies" under § 504. These are: the Architectural and Transportation Barriers Compliance Board, the Civil Aeronautics Board, the Commission of Fine Arts, the Federal Deposit Insurance Corporation, the Federal Labor Relations Authority, the Federal Maritime Commission, the National Transportation Safety Board, the National Labor Relations Board, the Railroad Retirement Board, the Securities and Exchange Commission, the Federal Communications Commission, and the Administrative Conference of the United States.

May 3, 1983

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL, CIVIL RIGHTS DIVISION

You have requested the views of this Office with respect to whether certain entities are "Executive agencies" covered by § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 (Act).[1] Section 504 prohibits, *inter alia,* discrimination against qualified handicapped individuals in any program or activity conducted by any "Executive agency." Each such agency is required by § 504 to promulgate regulations to carry out these provisions. Your inquiry arises in the context of your development of prototype regulations for the use of Executive agencies in fulfilling their responsibilities under § 504.[2] For the

___

[1] These entities are: the Architectural and Transportation Barriers Compliance Board, the Civil Aeronautics Board, the Commission of Fine Arts, the Federal Deposit Insurance Corporation, the Federal Labor Relations Authority, the Federal Maritime Commission, the Federal Reserve System, the Interstate Commerce Commission, the National Transportation Safety Board, the National Labor Relations Board, the Railroad Retirement Board, the Securities and Exchange Commission, the Federal Communications Commission, and the Administrative Conference of the United States.

[2] Under Executive Order No. 12250, 45 Fed. Reg. 72995 (1980), the Attorney General has general authority to coordinate the implementation by "Executive agencies" of various laws prohibiting discrimination, including § 504. Because you have decided, as a policy matter, to assist agencies in developing their own regulations by issuing a prototype set, rather than by issuing a set of regulations purporting to bind them, we need not address the more difficult questions which would be raised were the regulations to have been made mandatory.

reasons which follow, we believe that all of the named entities are "Executive agencies" under § 504.[3]

We begin with a general analysis of the intended scope of the statutory term "Executive agency" whose programs and activities are covered by § 504. We then apply this analysis to the named entities, to determine whether they should be regarded as falling within that category.

I

Section 504 of the Rehabilitation Act of 1973, as amended, provides in pertinent part that:

> No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance *or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978.*

29 U.S.C. § 794 (emphasis added). The underscored language was added to § 504 by § 119 of the Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978, Pub. L. No. 95–602, 92 Stat. 2955, 2982 (1978 Amendments). Although neither § 504 nor any other section of the Act defines the "Executive agencies" to which § 504 applies, the legislative history of the 1978 Amendments contains clear evidence of Congress' intent in this regard.

As passed by the House, § 119 of H.R. 12467, the Rehabilitation Amendments of 1973, would have extended the nondiscrimination provisions of § 504 to "any program or activity conducted by any Executive agency (as defined in section 105 of title 5, United States Code)." 124 Cong. Rec. 13892 (1982). Congressman Brademas, Chairman of the Subcommittee on Select Education of the reporting Committee on Education and Labor, described this provision as extending the antidiscrimination provisions of § 504 to "all activities and programs of the executive branch of the Federal government." *Id.* at 13897. Congressman Jeffords, who claimed responsibility for adding § 119 to the bill,

---

[3] You have asked for our views with respect to whether the named agencies should be regarded as "Executive agencies" as that term is employed in Executive Order No. 12250. In subsequent discussions with the staff of your Coordination and Review Section, it was agreed that the advisory nature of the prototype § 504 regulations made it more appropriate at this point for us simply to address the question of statutory coverage. We note, however, that we believe it was the President's intent in issuing the Executive Order to delegate to the Attorney General his authority over all "Executive agencies" covered by the various nondiscrimination laws mentioned in the Order, including the so-called "independent" agencies

111

described it as "extend[ing] the coverage of section 504 to include any function or activity of any department or agency of the Federal government." *Id.* at 13901.[4] He explained that "[w]hen the original legislation was developed it was intended to apply to every phase of American life," but that the Justice Department had since ruled that "the Federal Government was exempt from the statute."[5] The proposed amendment to § 504 "removes that exemption and applies section 504 to the Federal Government as well as State and local recipients of Federal dollars." *Id.*

Notwithstanding these broad statements by the House sponsors of the amendment to § 504, the House-passed version of the amendment to § 504 would by its terms have limited its coverage to "Executive agencies" as defined in 5 U.S.C. § 105. This definition explicitly excludes the United States Postal Service and the Postal Rate Commission. It includes, however, an entity ordinarily considered part of the Legislative Branch, the General Accounting Office.[6]

The Senate-passed version of H.R. 12467 contained no provision comparable to § 119 of the House-passed bill. The Senate bill contained another provision, however, which reflected a similar concern over how the Act's nondiscrimination provisions were being enforced against the Federal government. That provision added a new section to the Act making clear that individuals could sue federal agencies for violations of § 501 of the Act, 29 U.S.C. § 791, and making available to such individuals the rights and remedies applicable under Title VII of the Civil Rights Act of 1964, including attorneys fees. *See* S. Rep. No. 890, 95th Cong., 2d Sess. at 18–19 (1978).[7] Section 501(b) requires, *inter alia,* that "[e]ach department, agency, and instrumentality (including the United States Postal Service and the Postal Rate Commission) in the executive branch" must submit an affirmative action plan for the employment of handicapped individuals to the Civil Service Commission.[8]

---

[4] The language amending § 504 was not contained in the bill which was reported out of the House Committee on Education and Labor. *See* H.R. Rep. No. 1149, 95th Cong., 2d Sess. (1978). It was added to H.R. 12467 at some point prior to its introduction in the House in May of 1978. 124 Cong. Rec. 13621 (1978).

[5] The Justice Department "ruling" to which Congressman Jeffords was apparently referring was an opinion issued by this Office on September 23, 1977, to the General Counsel of the Department of Health, Education and Welfare. 1 Op. O.L.C. 210 (1977). In that opinion, this Office concluded that § 504, like Title VI of the Civil Rights Act of 1964, did not prohibit discrimination by recipients of federal financial support through programs of insurance or guarantee.

[6] Section 105 defines "Executive agency" to include "Executive department[s]," "Government corporation[s]," and "Independent establishment[s]." The "Executive department[s]" are defined in 5 U.S.C. § 101 to include all Cabinet-level agencies. "Government corporation[s]" are defined in 5 U.S.C. § 103 to include both government-owned and government-controlled corporations. An "independent establishment" is defined in 5 U.S.C. § 104 to mean "an establishment in the executive branch (other than the United States Postal Service or the Postal Rate Commission) which is not an Executive department, military department, Government corporation, or part thereof," and, in addition, the General Accounting Office. The General Accounting Office has historically been regarded as a part of the Legislative Branch both by Congress and by the Executive Branch. *See "General Accounting Office — Authority to Obtain Information in Possession of Executive Branch,"* 2 Op. O.L.C. 415, 416 (1978), and authorities cited therein.

[7] The provision was ultimately enacted as § 505(a)(1) of the Act, and is codified at 29 U.S.C. § 794a(a)(1) and (3).

[8] In hearings held during 1976 and 1977, the Subcommittee on the Handicapped of the Senate Committee on Human Resources had received evidence of the difficulties which the Civil Service Commission was

Continued

In Conference, the House conferees agreed to the Senate's proposed strengthening of § 501, and the Senate conferees agreed to the House bill's proposed extension of § 504, in a slightly modified form. As modified, the provision amending § 504 extended the antidiscrimination provisions of that section to "any program or activity conducted by any Executive agency or by the United States Postal Service." H.R. Rep. No. 1780, 95th Cong., 2d Sess. 29 (1978). According to the Conference Report, this modification was intended to make § 504's proposed new coverage of federal agencies consistent with the existing coverage of § 501(b). *See id.* at 93.[9] In short, the amended § 504 would apply, like § 501, to "each department, agency, and instrumentality . . . in the Executive branch," including the Postal Service, but would no longer apply to the General Accounting Office.[10]

Urging passage of the conference bill on the floor of the House, Congressman Jeffords again emphasized that the amended § 504 was intended to extend that section's antidiscrimination provisions to "any function or activity in every department or agency of the Federal Government." 124 Cong. Rec. 38551 (1978). *See also id.* at 38552 (legislation extends the provisions of § 504 to "each department, division, and agency of the Federal Government") (remarks of Rep. Sarasin).

With no objections to or comments on the conference amendment to § 504's new coverage, the bill passed the House by an overwhelming margin. *Id.* at

---

[8] (. . . continued)
encountering in trying to enforce agency compliance with § 501(b) of the Act. During those hearings, representatives of employee advocacy groups charged, and government witnesses conceded, that few federal agencies had made any progress in enhancing employment opportunities for handicapped persons. *See, e.g., Rehabilitation of the Handicapped Programs: Hearings before the Subcomm. on the Handicapped of the Senate Comm. on Labor and Public Welfare,* 94th Cong., 2d Sess., Part 3 (1976); *Rehabilitation Extension Amendments of 1977: Hearings on S. 1712 and S. 1596 before the Subcomm. on the Handicapped of the Senate Comm. on Human Resources,* 95th Cong., 1st Sess. at 387–415 (1977) (1977 Senate Hearings). In December of 1978, responsibility for enforcement of § 501(b) was transferred by the President to the Equal Employment Opportunity Commission, pursuant to Reorganization Plan No. 1 of 1978, 92 Stat. 3781. See Executive Order No. 12106, 44 Fed. Reg. 1053, 3 C.F.R. 263 (1978 Comp ), *reprinted in* 42 U S.C. 2000e-4 note (1978).

[9] The language which appears in the Conference Report is difficult to parse, and somewhat confusing: "The Senate recedes with an amendment adding coverage of the provision covered by Section 501(b)." *Id.* In light of the purpose of both the House and Senate to facilitate the Act's enforcement against Executive Branch agencies, we think the conclusion is inescapable that this language was intended to mean that the coverage of the two sections would be coextensive.

[10] We do not believe that Congress' failure to include an explicit reference in § 504 to the Postal Rate Commission indicates an intent to exclude that entity from coverage. It is true that § 501(b) refers explicitly to both the United States Postal Service and the Postal Rate Commission. However, that reference shows that Congress regarded them both as entities already "included" as agencies or instrumentalities in the Executive Branch. *See also* § 501(a) (jurisdiction of the Interagency Committee on Handicapped Employees described in terms of "each department, agency, and instrumentality of Government," without reference to either the Postal Service or the Postal Rate Commission, although a representative of the Postal Service sits on the Committee). Accordingly, we do not believe that a failure to single out either the Postal Service or the Postal Rate Commission for special mention in § 504 would establish a legislative intent not to include those entities as "Executive agencies" for purposes of that law. Moreover, it would be anomalous to conclude that Congress intended to extend § 504 to the Postal Service but not to the Postal Rate Commission. Accordingly, we believe that the Postal Rate Commission must be regarded as an "Executive agency" for purposes of § 504.

113

38553. The conference bill was debated and passed by the Senate on the same day, with no discussion of the amendment to § 504. *Id.* at 37504–10.

It is clear from the legislative history of the 1978 Amendments, as set forth above, that Congress intended the amended § 504 to have the broadest possible coverage within the Executive Branch. In the House, both before and after the conference amendments, the provision's sponsors emphasized its intended application to "any" activity of "every" federal entity.[11]

More specifically, the legislative history shows that Congress intended § 504 to apply coextensively with § 501(b). Thus Congress' understanding of the intended coverage of § 504 as it emerged from conference can also be gauged by reference to its understanding of the coverage of § 501(b). This in turn is illuminated by the reports on § 501's enforcement, which Congress had received each year since 1973 from the Civil Service Commission. These reports include statistics showing the progress made in hiring the handicapped by each Executive Branch agency responsible for submitting an affirmative action plan to the Commission under § 501(b). The 1977 hearing record of the Senate Committee on Human Resources incorporates a listing of agencies which had submitted such reports, and an analysis by the Civil Service Commission of their performance in hiring the handicapped. *See* 1977 Senate Hearings, *supra* note 8, at 401–08. The agencies reporting under § 501(b) include, in addition to the Cabinet level agencies, all of the independent regulatory agencies and many boards, commissions and councils which perform only advisory functions.[12]

In sum, the legislative history of the 1978 Amendments makes clear that Congress intended § 504 to apply, like § 501(b), to all "agencies and instrumentalities" in "the Executive [B]ranch" of government. Those "agencies and instrumentalities" were understood by Congress to include independent regulatory agencies performing functions constitutionally committed to the Executive Branch, as well as entities more closely subject to the President's day-to-day supervisory authority. Accordingly, we believe that the term "Executive agency" as used in § 504 must be construed broadly to include all governmental entities which are not within either the Legislative or Judicial Branches.

III

Applying the broad construction of "Executive agency," which we believe Congress intended for § 504 to the named entities, we conclude that all of them

---

[11] Notwithstanding these broad statements by the provision's sponsors, apparently no one proposed that it should apply to entities in either the Legislative or Judicial Branch.

[12] The Civil Service Commission's 1978 Report shows that all but two of the named entities had submitted affirmative action plans under § 501. *See* "Employment of Handicapped Individuals Including Disabled Veterans in the Federal Government," App. A (Sept. 30, 1978). One of the two missing agencies, the Federal Labor Relations Authority, was not established until October of 1978. See Pub. L. No. 95–454, 92 Stat. 1196 (1978). The other, the Architectual and Transportation Barriers Compliance Board, was at that time composed entirely of agency heads and staffed by personnel from the Department of Health, Education and Welfare. *See* Pub. L. No. 93–112, § 502, 87 Stat. 355, 391 (1973) (codified at 29 U.S.C. § 792(a) (1976)).

fall within that category. It is true that a number of these entities fall under the definition of "independent regulatory agencies" contained in the Paperwork Reduction Act of 1980, 44 U.S.C. § 3502(10). However, as discussed in the preceding section, in order to find these entities outside the scope of § 504's coverage, we would have to conclude either that they are within one of the other two exempted branches of government, or that they are not within the government at all. Notwithstanding the arguments that several of these entities have made in submissions to you, we do not think it constitutionally possible, in light of their clearly executive functions, to regard any of them as legislative entities. *Cf. Buckley* v. *Valeo,* 424 U.S. 1, 137–43 (1976). Nor do we understand any of the named agencies to argue that they are not governmental entities at all.[13] Consequently, we believe that all of them fall within the broad category of "Executive agencies" for purposes of § 504, and that they are therefore required to issue regulations to carry out the provisions of § 504 which apply to the programs and activities they conduct.

Although we conclude that Congress intended to bring all of the named entities within the category of "Executive agencies" covered by § 504, we have not addressed the related, but distinct question of the President's authority to direct coordination of § 504's enforcement through an Executive order. See supra note 2. We would prefer to address this question, if necessary, in the context of specific agencies, should any fail to adopt adequate regulations as required by § 504.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[13] One of the entities named in your list, the Commission of Fine Arts, concedes that it is within the Executive Branch, but argues that, because it is subject to the Federal Advisory Committee Act (FACA), it is not an "agency" and therefore not subject to § 504. It is true that the Commission would not be considered an "agency" under the Administrative Procedure Act (APA), 5 U.S C. § 551, unless it were an "authority" of the government. We do not believe, however, that an entity's status under the APA or the FACA was intended by Congress to determine its coverage by § 504. The legislative history of that Act shows that it was intended to apply to *all programs and activities conducted within the Executive Branch, not just those conducted by entities with particular statutory attributes.*